# CHARLESTON.

Bank v. Williamson *et als.*

Submitted September 5, 1912.　Decided November 11, 1913.

1. Compromises With Creditors—*Purchase of Assets—Withdrawal of Offer.*

A purchaser of the assets of an insolvent firm, under a proposal to pay, in consideration therefor, one-third of each of the several debts of the firm, assented to by practically all of the creditors, cannot retract or withdraw his proposal so as to bar acceptance thereof by one of the creditors to whom payment has not been made, without having first restored the *status quo.* (p. 195).

2. Same—*Purchase of Assets—Acceptance of Offer—Decree.*

If, in such case, a creditor whose claim has not been provided for in the decree confirming the purchase, file a cross-bill or an answer in the nature of a cross-bill, seeking the benefit of the contract of purchase, assented to by the other creditors, but not formally accepted by him, such claim so made amounts to an acceptance of the unretracted offer of the purchaser, and relief on the cross-bill is limited to a decree against the latter for payment of one-third of the debt. (p. 195).

3. Same—*Purchase of Assets—Decree on Cross-Bill.*

Such relief may be granted by an additional decree upon the cross-bill without reversal or disturbance of the previous one. (p. 195).

(Lynch, Judge, absent.)

Appeal from Circuit Court, Pleasants County.

Suit by the First National Bank of St. Marys and others against N. J. Williamson and others. From the decree, Watts, Ritter & Co., a corporation, appeals.

*Reversed in part. Affirmed in part.*

*Merrick & Smith,* for appellant.

*G. D. Smith* and *Craig & Wells,* for appellees.

Poffenbarger, President:

In a suit by creditors against N. J. Williamson & Co., an insolvent mercantile copartnership, a receiver was appointed and then there was an effort to compromise with the creditors on the basis of 33 1-3 per cent, which was effected as to all

but two of them, Watts, Ritter & Co., a corporation, whose claim had been reduced at the date of the compromise to less than $900.00, and the Baltimore Bargain House.    The former's claim had been secured by a deed of trust on a tract of land belonging to Isabella Williamson, the mother of one of the members of the firm, and another tract belonging to her husband.   The scheme of compromise was founded on a proposed sale of the assets of the concern to H. Frank & Sons, in consideration of their payment of one-third of each of the several debts.   An agreement bearing date May 29, 1909, between the special receiver and S. K. Frank, who was admittedly acting for his firm, was prepared and signed by them, to become effective upon the acceptance by the several creditors of the proposed partial payment in satisfaction of their respective demands.   Under this agreement, Frank proposed to take "all the personal effects of the late firm of N. J. Williamson & Co., together with accounts, notes, monies and other choses in action and the equity of the said N. J. Williamson & Co., in any real estate belonging to the said firm, or to any member thereof", and the net price to be paid therefor was stated to be "33 1-3 cents on the dollar and to pay the court costs, costs, fees and commissions of the receiver, and his attorney's fees attendant upon the management and closing up of the said business of the said concern or firm, subject to the order and approval of the court." Later, all of the creditors, with two exceptions noted, accepted. The Baltimore Bargain House claim is not involved here.   An effort was made to eliminate the Watts, Ritter & Co. claim in the following manner:   The receiver and N. J. Williamson, after consultation with Frank, went to Cincinnati to secure the acceptances of such creditors as resided there, and, on the way down, stopped at Huntington and made a proposition to Watts, Ritter & Co.   They represented that Isabella Williamson, on whose property the claim was secured by a deed of trust, would apply on it her percentage of a certain debt she had against the insolvent firm and pay enough more to make a reduction of $300.00.   Watts, Ritter & Co. was willing to accept this proposition and thereupon had its attorneys return the claim.   Under these conditions, a decree was entered on the 27th of July, 1909, which ignored the

claim of Watts, Ritter & Co. altogether. Isabella Williamson received on account of her debt something over $250.00, but refused to pay it on the claim. The provision for it having failed, the company placed its claim again in the hands of its attorneys and notice of a motion, Sept. 17, 1909, to reverse the decree, was given, which motion was then made and the court took time for consideration. On the next day, the cause was referred to a commissioner to take, state and report an account, which report was made and filed on the 3rd day of January, 1910. On the 12th of January, 1910, Watts, Ritter & Co. filed an answer in the cause in the nature of a cross-bill praying relief from the decree, and against the receiver, Herman Frank, S. K. Frank, H. S. Frank, M. O. Swallow, trustee, J. M. Williamson and N. J. Williamson, and process was taken out thereon. Special replications were filed to the cross-bill and a large amount of evidence taken. On the hearing of the cause, the court dismissed the cross-bill, but reserved to Watts, Ritter & Co. its right to enforce its lien on the real estate. That company has appealed.

Much of the cross-bill relates to omissions of assets from an inventory made up by the receiver sometime before the decree, and amounting to $4,594.00. It did not include the following items: The value of the Schoenfield Company goods, $1,389.80; Brandeis & Lieberman goods, $155.00; cash in bank, $675.00; notes and book accounts, $300.00; which, including some other small amounts shown by the evidence not to have been included, amount to about $2,700.00. The inventory as made up, exclusive of these items, amounted, as has been stated, to $4,594.00, and the receiver sold the personal assets to Frank & Sons for the sum of $4,806.27. This sale having been reported to the court, the debts were ascertained by the decree, with the exception of that of Watts, Ritter & Co., and the receiver was ordered first to pay out of the fund the expenses of the receivership, amounting to $337.00, compensation to the receiver amounting to $200.00, and an attorney's fee amounting to $250.00, and the costs of the suit, to be taxed by the clerk, and apply the balance pro rata on the debts as so ascertained. All of the creditors except the Baltimore Bargain House and Watts, Ritter & Co. consented to the entry of the decree and so bound themselves

to accept from the receiver the pro rata distribution in payment, or part payment, of one-third of their several debts. The commissioner's report filed in the proceedings on the cross-bill shows Frank & Sons paid in addition to the sum of $4,806.27 other sums amounting to $1,238.70, making a total of $6,044.97, all of which has been disbursed except $75.83 which was to be applied to the Baltimore Bargain House claim. Frank & Sons, therefore, paid largely more than one-third of the value of all the assets of the concern. With all of the omitted items added to the invoice, the amount would be about $7,300.00 and they paid $6,044.97, all of which shows that neither they nor the creditors treated the contract as one to pay only one-third of the value of the assets, but that all understood it to be a contract to pay one-third of each of the several debts of the concern. Unless this contract is to be displaced, and the settlement made on a different basis, the omissions from the invoice are wholly immaterial. The written proposal of Frank was to pay for the assets "the net price of 33 1-3 cents on the dollar", but it does not say on what basis the 33 1-3 cents was to be computed, whether the value of the goods or the debts. Hastily read, it would seem to say on the value of the assets, but it does not say so in terms and was open to interpretation and construction. The parties have construed it to mean 33 1-3 per cent of the indebtedness, and the decree of July 27, 1909, proceeds upon that basis.

The cross-bill is a very lengthy document, solidly covering about 22 pages of the printed record, and complains of many things. In some respects, the respondent treats itself as affected or as being bound only by the facts as they existed at the date of the institution of the suit, and as having no concern whatever with the Frank contract of purchase. In other respects, it seeks to take advantage of that purchase and complains of failure to account for all of the purchase money or to comply with the agreement in that the purchasers took certain assets under that agreement without having paid or accounted for their value at the contract price. It admits the willingness of respondent, at the time it was made, to accept the proposition of N. J. Williamson and the receiver, under which it was to get $300.00 on account of its claim and

be left free to look to the real estate on which it had a deed of trust for the residue thereof, and complains of the failure of that arrangement. It cannot be permitted, under the rules of procedure, to play fast and loose with the Frank contract of purchase. That contract cannot be treated as in for some purposes and out for others. If any portion of it is accepted, the whole of it must be taken. That the answer in the nature of a cross-bill does claim the benefit of it is clear. It endeavors to hold Frank & Sons to an accounting on the basis thereof. It closes with a prayer for correction of the inventory and an additional charge on account thereof against Frank & Sons on the basis of their contract of purchase. Having accepted it thus far, the respondent cannot be permitted to set it aside or overthrow it in other respects. The utmost it can do on such a cross-bill is to claim such advantage as the proposal of purchase conferred upon each creditor, namely, the payment of one-third of his debt. In view of this conclusion, it is wholly unnecessary to enter upon any inquiry as to the tenableness of the respective contentions relating to the inventory and omissions therefrom. Frank did not buy the assets on the basis of 33 1-3 per cent of their value, but on the basis of payment of one-third of the indebtedness of the firm.

The proposition of purchase included the equity of redemption of N. J. Williamson & Co., or any member of the firm, in any real estate belonging to it. They had certain real property in the town of St. Marys, encumbered by deeds of trust, one held by the Pleasants County Bank for the sum of $1,500.00, and another by T. J. Taylor and Oscar Goetgeluck for $2,000.00. Frank & Sons purchased these debts from the Pleasants County Bank and Taylor and Goetgeluck, and N. J. Williamson and J. M. Williamson and their wives executed another deed of trust on the firm real estate to secure to H. Frank & Sons the payment of a note for the sum of $1,500.00, made July 2, 1909. The cross-bill prays a sale of this real estate and also attacks the deed of trust executed in favor of Frank & Sons. All these matters are to be ignored in the disposition of this case, for the same reason that the allegations respecting omissions from the inventory are regarded as immaterial. Under the proposition made by

Frank & Sons, the creditors are to get one-third of their debts, and, having received that, they have no concern with the assets of the firm or the disposition thereof.

As ascertained by the commissioner and stated in his report, there was due Watts, Ritter & Co., as of January 11, 1910, including interest to that date, $856.93, and it remains only to inquire whether Watts, Ritter & Co. are in any manner precluded from acceptance of the proposition made by Frank & Sons to pay one-third of that debt and enforce the agreement consummated by such acceptance. The principle inhibiting Watts, Ritter & Co. from asking more than is obtainable by acceptance of the offer of Frank & Sons, precludes the withdrawal of that offer. On the faith of it, they have taken over the assets of N. J. Williamson & Co. They could not force Watts, Ritter & Co. to accept their proposition, but it has now come into this cause seeking the benefit of that proposal, converted into a contract as to other creditors, and to charge Frank & Sons under its terms and provisions. This amounts to a voluntary acceptance of the proposition. The offer was made for the benefit of Watts, Ritter & Co. as well as all other creditors, and there has been no retraction thereof nor any attempt to withdraw it. Besides, under the contract resulting from its acceptance by numerous creditors, Frank & Sons have taken all of the assets of the firm, including its real estate. In this way, they have gone beyond the point of retraction. It is too late. The offer cannot be withdrawn without restoration of the *status quo* and there is no proposal thereof. By claiming the benefit of that offer in the cross-bill, Watts, Ritter & Co. has acquired right to all it can get under that proposition and precluded itself from demanding anything more. It amounts to an acceptance of the original offer, converting it into a contract between Frank & Sons and Watts, Ritter & Co., wherefore the latter is entitled to a decree for one-third of its debt as ascertained by the commissioner, and no more. The debt, on the 11th of January, 1910, was $856.93, one-third of which is $285.64.

No complaint is made of the failure of the court to act upon the motion, docketed Sept. 17, 1909, to reverse the decree of July 27, 1909, at the time it was made, or within a reasonable time thereafter; but the overruling thereof in the final

decree pronounced on November 6, 1911, is complained of. At that time it was properly overruled, for reasons already stated. Subsequent to the docketing of the motion, Watts, Ritter & Co. came in and filed its answer and cross-bill, seeking the benefit of the sale made to Frank & Sons. Having done that, all it is entitled to could have been given by an additional decree, supplying the omission in the decree of July 27, 1909. That decree adjudicated nothing for or against the cross-bill plaintiff. Its claim was simply omitted by failure to make any provision therefor. There was no adjudication either for or against it. As to it, the decree was merely silent.

Although made by S. K. Frank in his individual name, the offer of purchase was made on behalf of the firm of H. Frank & Sons, of which he was a member. That he purchased as the agent of the firm is admitted by the answer to the cross-bill. As Herman Frank, S. K. Frank and H. S. Frank, partners trading and doing business as H. Frank & Sons, were the real purchasers of the assets of the insolvent firm, it is proper to decree payment by them of the amount to which the appellant is entitled.

Resistance of this conclusion by counsel for the appellees is based almost entirely upon the withdrawal from the hands of its attorneys of the claim of the appellant upon the faith of the arrangement made with it by the receiver and N. J. Williamson, but we find no element of estoppel in this. Williamson and the receiver both admit they had no authority from Isabella Williamson to make such an arrangement on her part. Though S. K. Frank denies having authorized or instigated the transaction, the receiver virtually contradicts him and all the circumstances strongly tend to prove the arrangement was made at his instance. At the time Williamson and the receiver called upon the appellant at its place of business in Huntington and made the unauthorized arrangement for payment of $300.00 on its claim, they were enroute to Cincinnati, O., for the purpose of effecting compromises with other creditors of the firm. All of the compromise agreements were made for Frank & Sons as well as for Williamson & Co., and the proposition of the former extended to all of the property and all of the creditors of the

latter.  Having full knowledge of the nature of the arrangement made with the appellant, and the probability of its failure, they are not in a position to say they relied upon it to their injury or detriment.  In this connection, an effort has been made to limit the purchase contract to the payment of one-third of the claim of the unsecured creditors, but the written proposal of purchase is not so limited, nor does the conduct of Frank & Sons harmonize with it as so limited by interpretation.  They did not ignore the secured debts.  They purchased these of the bank and Taylor and Goetgeluck, which amounted to payment in full and they endeavored to purchase that of Watts, Ritter & Co., for something less than the amount due.  Manifestly there was no purpose in the proposal to restrict the secured creditors to their specific liens for satisfaction of their claims.

In so far as the decree complained of dismisses the cross-bill of the appellant and denies it relief, it will be reversed and in all other respects affirmed, and a decree will be entered here in favor of the appellant against Herman Frank, S. K. Frank and H. S. Frank, partners doing business as H. Frank & Sons, for the sum of $285.64, with interest thereon, from the 11th day of January, 1910, and costs in the court below, subsequent to the decree of July 27, 1909, as well as in this Court.

*Reversed in part.  Affirmed in part.*